UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SAMUEL TYRONE WILLIAMS                                            PETITIONER

V.                                      CIVIL ACTION NO.1:09CV117-SA-JAD

STATE OF MISSISSIPPI                                              RESPONDENT

## REPORT AND RECOMMENDATION

Samuel Tyrone Williams was indicted for aggravated assault and kidnapping. He was convicted of simple assault and kidnapping in the Circuit Court of Lee County, Mississippi and sentenced to 30 years as an habitual offender in the custody of Mississippi Department of Corrections on the kidnapping charge. Williams' victim was Tonya Elliot, his wife Tragelia's former lover. At trial Williams admitted hitting Elliot but denied that any kidnapping had taken place. In his federal petition for habeas corpus he claims he is entitled to a new trial based on Elliot's purported recanting of her testimony. Williams also asserts that the admission of the tape of his wife's call to 911 reporting Elliot missing violated his Confrontation Rights.

## LIMITATIONS ON REVIEW

Consideration of a federal petition for habeas corpus is a two-tiered procedure. Before considering the merits of any claim the court must first determine if all procedural steps necessary to preserve each issue raised for federal review have been taken. The petition must be timely filed. Secondly, each claim in the petition must have been exhausted, 28 U.S.C § 2254(b)(1). It is admitted that Williams' petition is timely and that all claims have been properly exhausted.

Petitioners must also meet state procedural requirements in the handling of their cases in state courts. If the state court, pursuant to its regularly enforced rules and procedures, refuses to consider an issue on the merits because of a procedural violation, the federal courts will almost never

consider the procedurally defaulted claim. To avoid the bar of a procedural default, the petitioner must show 'cause and prejudice' or a 'fundamental miscarriage of justice.'[1]

If all the procedures have been followed in state court, the federal courts will then address issues affecting substantial federal constitutional rights. However, the federal courts do not function as super appellate courts over the states and hold no supervisory authority over those courts. The federal courts may not correct errors of state law unless they also violate the constitutional rights of an accused.[2]

Even in matters affecting fundamental constitutional rights the federal courts have a very limited scope of review. Title 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or

---

[1] "Where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, this court may not review the prisoner's habeas petition unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Moawad v Anderson*, 143 F.3d 942, 947(5th Cir. 1998) citing *Stokes v. Anderson,* 123 F.3d 858, 859 (5th Cir.1997), *cert. denied,* 522 U.S. 1134, 118 S.Ct. 1091, 140 L.Ed.2d 147 (1998). A "fundamental miscarriage of justice" is shown only where the petitioner can establish his factual innocence of the crime of conviction, by new reliable evidence not presented at trial. *Fairman v. Anderson,* 188 F.3d. 635, 644(5th Cir. 1999)(citing *Ward v. Cain*, 53 F.3d 106,108 (5th Cir. 1995).

[2] *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1981); *Engle v. Isaac,* 456 U.S. 107, 121, n. 21, 102 S.Ct. 1558, n. 21, 71 L.Ed.2d 783(1982); *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). *Id* at 348-9, 113 S. Ct at 2121.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The federal courts may not disturb the legal holdings of the state courts even if convinced they are erroneous. The federal courts may intervene only if it the application of federal law is also objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389(2000). This statute presumes each factual finding by the state courts is correct. These findings can be disturbed only if the petitioner rebuts the presumption with clear and convincing evidence.[3] This court's power to upset the judgments of the state courts in a criminal matter is appropriately very limited. The federal courts address only issues affecting substantial federal constitutional rights. This petitioner's claims have been reviewed in light of the AEDPA's limitations.

## GROUND ONE-VIOLATION OF CONFRONTATION CLAUSE

Tonya Elliot and the petitioner's wife had once had an intimate relationship. Williams believed the two had renewed their romance. After being told that the women were at a local motel, Williams went to the motel to confront the women. On spotting Elliot leaving the motel, Williams accosted her. After a brief exchange of words, Williams physically attacked Elliot, beating her badly. According to Elliot's testimony, Williams then forced her into the passenger seat of her car and drove off in her car. Later Tragelia realized Elliott was missing and called her friend's cell phone. While she did not speak directly with Elliott she heard Elliot speaking in the background and surmised that Williams had abducted her. It was her call to 911 that initially alerted the police.

Because of Mississippi's spousal privilege Tragelia was not allowed to testify, but the tape of her 911 call was played during the trial without objection. Williams asserts that this was a

---

[3] 28 U.S.C. § 2254(e)(1).

violation of the Confrontation Clause. *Crawford v. Washington,* 541 U.S. 36 (2004). The respondents contend first, that this ground is procedurally barred; secondly, that the 911 tape does not amount to testimonial evidence and therefore there was no Confrontation Clause violation; and finally that even if admission was a violation of the Confrontation Clause any error was harmless error beyond a reasonable doubt.

The Mississippi Court of Appeals found that this ground was procedurally barred pursuant to Mississippi's contemporaneous objection rule. *Williams v. State*, 960 So.2d 506, 511 (Miss. Ct. App. 2006). Mississippi's contemporaneous objection rule has been held to be an independent and adequate state procedural bar. *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992).

Williams tries to excuse the failure to make a contemporaneous objection by claiming that his lawyer preserved the issue by filing a motion in limine to prohibit Tragelia's testimony. He also repeats the claim made in his motion for a new trial, that his lawyer was not aware of the fact that Tragelia's 911 call was on the tape that was offered into evidence. At that time the prosecution responded that a copy of the tape was made available to the defense and the defense attorney was specifically advised that the transcripts provided to him were of only some of the telephone calls made to 911 in this case. The calls from Elliot herself were difficult to understand from the tape and had been transcribed. The other calls from Tragelia and from Elliot's cousin were on the tape but not transcribed. The defense attorney did dispute the prosecution's assertions. In any event listening to the tape makes it immediately apparent that the caller could not be Elliot and had to be Tragelia. Nevertheless the attorney made no objection before, during or after the playing of the 911 tape. Because there was no contemporaneous objection the trial and state appellate courts held this ground to be procedurally barred. Whether this procedural bar was properly imposed is a question

4

of state law not federal constitutional law. This court may therefore not review this claim because of the state procedural bar, *Sawyer v. Whitley*, 505 US 333 (1992), in the absence of a showing that there is some cause to excuse the procedural default that is "external" to the petitioner. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). While it is true that attorney error amounting to constitutionally deficient assistance of counsel can constitute cause excusing a procedural default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), Williams has not asserted ineffective assistance of counsel. He has therefore not shown any cause to excuse the default. Without a showing of an external cause this court need not consider actual prejudice to his case which is the second prong required to excuse a default. *Coleman*, 501 U.S. at 750. Having procedurally defaulted this ground in the state court, no relief may be granted on this claim.

Alternatively the petitioners have asserted that the admission of the 911 tape does not run afoul of the Confrontation Clause. The Mississippi Court of Appeals held that the tape was not testimonial and therefore was properly admitted. The following is a transcript of the call:

> Caller: Yes, I um, I need some help. My friend, Tonya, she left from my room up here at the Trace Inn and Samuel Williams has got her hostage and he's in the car with her 'cause I've been calling her cell phone and I called a minute ago and her cell phone picked up and I can hear her in the back saying "Please can I just go check on my momma? Please can I go check on my momma?"
>
> 911 : You don't know where they are?
>
> Caller: Nope. I know they're in the car riding. They could be on any back roads like Empire Metal or in Shannon anywhere. But I know she had left here and I know I haven't been able to get in contact with her and that's not like her for her to leave here and me not able to call her. See her mom is real bad, you know, she's real bad sick. And they could be in like a 2-door Grand Prix. Uh, it don't have any hubcaps or anything on it. Or they could be in his, in his truck - tan and brown

5

| | |
|---|---|
| 911: | Okay. (indistinct)... sending out there so they can fill out a report on it. |
| Caller: | Okay, I'm at the Trace Inn in 431. |
| 911: | 431? |
| Caller: | Yes, ma'am. |
| 911: | Okay. We'll send them out there. |
| Caller: | Alright. Bye-bye. |

To prevail on this claim Williams must show that the Mississippi court's determination that the tape is not "testimonial" is an unreasonable application of federal law or contrary to federal law. A comparison of this case with one of the two fact patterns in *Davis v. Washington*, 547 U.S. 813 (2006) shows that the Mississippi court could not reasonably make any other determination. In *Davis,* a domestic abuse victim called 911 because Davis was attacking her. The 911 operator told the victim to quit talking and specifically asked her to identify her attacker by name. The victim gave her the defendant's name. The 911 tape was played over the defendant's objection. His victim had been subpoenaed but failed to appear at trial. While the responding police officers' testimony proved that the victim was upset and bruised, their testimony could not establish the cause of her injuries. Davis was convicted of felony violation of a domestic no-contact order. The United States Supreme Court found that this 911 interrogation was admissible and not a violation of the Confrontation Clause.

Here there was no dispute that Tragelia was not a witness to any assault or to the kidnapping of Elliott. The purpose of her call was to alert police and to seek their assistance in the midst of a perceived emergency. The contents of the tape did not constitute a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Williams v. State*, 967 So.2d

506, 510 (Miss. Ct. App. 2007) citing *Davis v. Washington*, 547 U.S. 813, 824 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 51 (2004)). The tape really did nothing more than explain what triggered the investigation. Her statements were nontestimonial because "objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 828 (2006). Unlike Davis there is no real interrogation recorded on the tape. The decision that the admission of the tape did not violate the Confrontation Clause is not unreasonable application of Supreme Court precedent.

Finally even if deemed error, the admission of the tape was beyond any doubt harmless error. First the tape is not particularly incriminating. It was a brief moment, literally, (R. 309) in a two day trial. It was a repetition of as segment of the investigator's testimony (R. 136-7) that did no more than explain what happened to trigger the investigation. Williams claims that this tape provides the only corroboration for Ellis' testimony. As will be discussed more fully below, Elliot's account of the kidnapping included a number of details about things that happened during her hours-long ordeal were independently verified. That her friend accurately guessed what had happened to her is insignificant in comparison to the multiple ways in which Elliot's testimony was corroborated. The state court's finding that any error in the admission of the tape was harmless is neither contrary to federal law, nor is does it represent an unreasonable application of federal constitutional law. No relief should be granted on this ground.

## GROUND TWO-NEWLY DISCOVERED EVIDENCE

Williams contends that Elliot has recanted her testimony and that he is actually innocent of the kidnapping charge. He contends that the failure to grant him a new trial based on this new evidence violates his due process rights. He submitted three affidavits in support of this contention,

7

but now admits that the affidavit of his cousin should not be considered since this testimony was available and not presented at trial. He does not submit an affidavit from Elliot and it is clear that she has not in fact recanted her testimony.

The testimony at trial establishes that Elliot was abducted by Williams. He continued beating her during part of this time. When she unsuccessfully attempted to escape, Williams beat her again and threatened to kill her and hurt her family. Thereafter Elliot made no further attempt to escape from Williams. When at last Williams released her, Elliot immediately called 911. She reported the beating, the abduction and the threats. When the car was running low on gas, Elliot reported that Williams drove to a local gas station and forced her to get out of the car and come to the drivers side of the car. She told the officers $5.01 in gas was pumped and that Williams had given another customer $ 10.00 to pay for the gas. Williams drove off without waiting for his change. Videotape at the named gas station showed what appeared to be her car and individuals who could be Williams and Elliot at the station. Just as Elliot had reported, the video showed the man in the car walking a few steps away, apparently handing payment to another individual. The man then immediately left without waiting for change. A record of the gas purchase for $ 5.01 out of $10.00 was found at the gas station at the time of the video.

Additionally Elliot reported placing speed dial calls on her phone trying to alert others of her plight. Her cell phone records corroborated Elliot. Elliot reported receiving phone calls from concerned people and that Williams could not figure out how to work her telephone. Again the phone records corroborated Elliot. Elliot also detailed two phone conversations between a police officer and Williams after her kidnapping had been reported. She said that Williams had told the officer that Elliot was not with him and that he did not know where she was. While denying the

kidnapping, Williams himself corroborated Elliot's testimony by reporting the two conversations with this one officer and the same content of the phone conversation. Williams also testified that he received the call from the officer at two different places.

The first affidavit is from Tragelia Williams the petitioner's wife. She paints a damning picture of Williams as a violent, out of control man, who was unreasonably jealous of what she insists was only a friendship with Elliot. She says that Williams threatened to beat both her and Elliot. Williams' testimony at trial contradicts Tragelia's because he testified that Elliot was his and his wife's lover and a fellow drug user during their marriage. Tragelia's affidavit does not in fact ever state that Elliot confessed to manufacturing the kidnapping charges. She claims that it became apparent after the trial that Elliot wished to renew their romantic involvement. Tragelia reports that Elliot said, "I put that n...a where he belongs... so we could be together." This is at best an ambiguous suggestion that Elliot had manufactured the claim. It is not sufficient to cast doubt on the reliability of the trial result.

The second affidavit from a Brad Clifton also contradicts Tragelia's affidavit. It asserts that Elliot and Tragelia conspired to create a false kidnapping claim and that at Tragelia's insistence, Elliot made up the story about the kidnapping. According to this affidavit the kidnapping charges were not pressed until some six months later, a fact refuted by the record in this case. As the respondents point out the affidavits cannot explain how independent records, video and Samuel Williams himself have corroborated Elliot's testimony. Williams in his traverse also admits, "Elliot also testified that she was at all times held against her will when the surveillance video showed that at times the Petitioner was not even in the vehicle with Elliot and thus could not have controlled her." (Doc. 29, p. 12.) Having denied at trial that he was ever in the car with Elliot, this admission

9

just further confirms that testimony from Tragelia, whom he prevented from testifying at trial and from Clifton would not make any difference. This purported newly discovered evidence does not justify the granting of any relief.

The undersigned recommends that the petition be dismissed with prejudice.

The parties are referred to 28 U.S.C. § 636(b)(1) and Local Rule 72(a)(3) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within fourteen days of this date. Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within fourteen days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 7th day of October, 2010.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE